# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                                     **No.**    **04-cr-1685 JB**
                                                         **15-cv-1188 JB/SMV**

**MARCOS SANCHEZ,**

    **Defendant.**

## MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before me on Defendant Marcos Sanchez's Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. [§] 2255 (and *Johnson v. United States*), filed October 23, 2015 [CR Doc. 104; CV Doc. 1], and his Amended Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255, filed August 8, 2016 [CR Doc. 112; CV Doc. 7]. Mr. Sanchez filed a supplement to his amended motion on October 3, 2016. [CR Doc. 117; CV Doc. 12]. The United States responded on October 10, 2016. [CR Doc. 118; CV Doc. 13]. Mr. Sanchez replied on October 20, 2016. [CR Doc. 121; CV Doc. 16]. The Honorable James O. Browning, United States District Judge, referred this matter to me for analysis and a recommended disposition. [CR Doc. 106; CV Doc. 2]. Having considered the briefing, the relevant portions of the underlying criminal record, the relevant authorities, and being otherwise fully advised in the premises, I find that Mr. Sanchez's prior convictions for violating NMSA 1978, § 30-16-3(A) qualify as violent felonies under the enumerated clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B). Because I find that Mr. Sanchez was not sentenced under the residual clause of § 924(e)(2)(B), his sentence is not unconstitutional and he is not entitled to

re-sentencing pursuant to *Johnson v. United States* and *Welch v. United States*.  His motion should be denied.

## Background

On August 25, 2004, Mr. Sanchez was charged with one count of being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1), 924(a)(2).  Presentence Report ("PSR") at 2.  On July 17, 2006, he pleaded guilty to the offense.  *Id.*  United States Probation and Pretrial Services submitted his PSR to the Court on October 3, 2006.  *Id.* at 1.  The PSR provided that Mr. Sanchez qualified as an armed career criminal under the ACCA because he had three prior violent felony convictions, all for residential burglary in New Mexico.  *Id.* at 7, 8, 10–11.  With the Armed Career Criminal enhancement, Mr. Sanchez's offense level was 33.[1]  *Id.* at 7.  Based on a downward adjustment for acceptance of responsibility, his total offense level was 30, with a criminal history category of VI and a guideline imprisonment range of 180–210 months.  *Id.* at 7, 21.  On November 10, 2006, Judge Browning sentenced Mr. Sanchez to 180 months' imprisonment.  [CR Doc. 91] at 2.

Mr. Sanchez appealed on grounds unrelated to his sentence.  The Tenth Circuit Court of Appeals affirmed his conviction on March 17, 2008.  [CR Doc. 100-1].  The Supreme Court denied Mr. Sanchez's petition for a writ of certiorari on October 6, 2008.  [CR Doc. 102-1].  The instant case is his first motion under § 2255.

---

[1] In computing Mr. Sanchez's base offense level, the PSR indicated that the three prior burglary convictions qualified as "crimes of violence" under § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2 of the U.S. Sentencing Guidelines Manual ("Guidelines").  PSR at 5–6.  Pursuant to § 2K2.1(a), the provision that sets out the sentencing guideline for § 922(g)(1) offenses, Mr. Sanchez had a base offense level of 24 based on the prior convictions for "crimes of violence."  *Id.*  His total offense level was then calculated, as described above, from this base offense level.  Mr. Sanchez does not challenge in the instant case his enhancement under § 4B1.2.

## Motions under § 2255 and *Johnson v. United States*

Pursuant to 28 U.S.C. § 2255(a), a "prisoner in custody" pursuant to a federal conviction may "move the court" "to vacate, set aside or correct the sentence" if it "was imposed in violation of the Constitution or laws of the United States."

In *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015), the Supreme Court held that the so-called residual clause of the definition of "violent felony" in the ACCA was unconstitutionally vague. The ACCA defined "violent felony" as follows:

> any crime punishable by imprisonment for a term exceeding one
> year . . . that —
> (i) has as an element the use, attempted use, or threatened use of
> physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, *or
> otherwise involves conduct that presents a serious potential risk of
> physical injury to another.*

18 U.S.C. § 924(e)(2)(B) (emphasis added). The closing words of this definition, italicized above, have come to be known as the "residual clause."

The Court explained that the residual clause left "grave uncertainty" about "deciding what kind of conduct the 'ordinary case' of a crime involves." *Johnson*, 135 S. Ct. at 2557. That is, the residual clause "denie[d] fair notice to defendants and invite[d] arbitrary enforcement by judges" because it "tie[d] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Id.* Second, the ACCA's residual clause left "uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* at 2558. By combining these two indeterminate inquiries, the Court held, "the residual clause

produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.* On that ground it held the residual clause void for vagueness. *Id.*

Soon thereafter, the Court determined that the ruling in *Johnson* was substantive (as opposed to procedural) and, therefore, had "retroactive effect in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016). Accordingly, *Welch* opened the door for individuals sentenced under the residual clause of the ACCA's violent-felony definition to move to vacate their sentences as unconstitutional under § 2255.

### Mr. Sanchez's convictions for New Mexico residential burglary qualify as enumerated violent felonies.

Mr. Sanchez was designated as an armed career criminal—and thus, his sentence was enhanced—based on three prior felony convictions for residential burglary in New Mexico, NMSA 1978, § 30-16-3(A). PSR at 7, 8, 10–11; [Doc. 7][2] at 2–3. This designation was based on a determination that his burglary convictions qualified as "violent felon[ies]," as that term is defined in § 924(e)(2)(B) of the ACCA. PSR at 21; [Doc. 7] at 2–3.

Mr. Sanchez argues that his burglary convictions could have qualified as violent felonies (and, thus, counted toward his armed career criminal designation) only under the now-invalidated residual clause, entitling him to be resentenced. [Doc. 7] at 3. The United States argues that the residential burglary convictions qualify as violent felonies even absent the unconstitutionally vague residual clause. [Doc. 13] at 2. The government argues that Mr. Sanchez's residential burglary convictions qualify as violent felonies under the ACCA's

---

[2] Unless specifically noted otherwise, citations to document numbers refer to the docket in the civil case, case number 15-cv-1188 JB/SMV.

so-called "enumerated clause," which designates certain specific crimes, including burglary, as violent felonies.[3]  *Id.*  Therefore, the United States argues, *Johnson* does not apply to this case, and Mr. Sanchez should not be resentenced.  I agree with the United States.  I find that Mr. Sanchez's prior convictions for New Mexico residential burglary qualify as violent felonies under the enumerated clause of § 924(e)(2)(B), and not the residual clause, because New Mexico residential burglary is substantially similar to generic burglary.  He is not entitled to resentencing.

The enumerated clause of § 924(e)(2)(B)(ii) provides that an underlying felony conviction is a "violent felony" if it "is burglary, arson, or extortion, [or] involves use of explosives."  To determine whether a past conviction qualifies as one of the offenses enumerated in § 924(e)(2)(B)(ii), courts compare the elements of the crime of conviction with the elements of the "generic" version of the listed offense—in other words, "the offense as commonly understood."  *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013).  A prior conviction qualifies as an enumerated ACCA predicate offense only if its elements are the same as, or narrower than, those of the generic offense.  *Id.*; *Mathis v. United States*, 136 S. Ct. 2243, 2247 (2016).  The definition and scope of the offenses enumerated in the ACCA's definition of "violent felony" are questions of federal law.  *See United States v. Rivera-Oros*, 590 F.3d 1123, 1126 (10th Cir. 2009).

---

[3] Mr. Sanchez also argues that the residential burglary convictions do not fall under the so-called "force clause" of the ACCA, which provides that a felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another" is a qualifying violent felony.  § 924(e)(2)(B)(i); [Doc. 7] at 6.  The United States does not dispute this; it argues only that the convictions qualified under the enumerated clause.

**New Mexico burglary, § 30-16-3, is divisible into
subsection A (residential burglary) and subsection B (non-residential burglary),
and Mr. Sanchez was convicted under subsection A.**

To determine whether a prior conviction is sufficiently similar to a generic offense, courts generally apply the so-called "categorical approach."  That is, courts consider only whether the elements of the crime of conviction sufficiently match the elements of the generic offense, while ignoring the particular facts of the case.  *Mathis*, 136 S. Ct. at 2248 (citing *Taylor v. United States*, 495 U.S. 575, 600–01 (1990)).  If the underlying statute of conviction "sweeps more broadly than the generic crime," the prior conviction cannot qualify as an ACCA predicate, irrespective of whether the defendant's actual conduct in committing the crime would qualify under the generic offense.  *Descamps*, 133 S. Ct. at 2283.

Some statutes, however, have a more complicated structure, making the comparison of elements more difficult and requiring a slightly different approach.  A single statute may be "divisible"—it may list elements in the alternative—and thereby define multiple crimes.  *Id.* at 2281.  When a statute defines multiple crimes by listing alternative elements, courts undertake the "modified categorical approach" to determine *which* of the multiple alternative elements listed in the statute applied to convict the defendant.  *Id.*  Under the modified categorical approach, a sentencing court looks to the record of conviction (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of.  Then, the court is able to compare the elements of that crime, as the categorical approach commands, with the elements of the relevant generic offense.  *Id.*

6

The Supreme Court has provided guidance for determining whether a statute is indivisible or divisible and, thus, whether to implement the modified categorical approach first or proceed directly to the categorical approach. *Mathis*, 136 S. Ct. at 2256–57. The central question is whether the statute lists multiple *elements* disjunctively, thereby creating multiple different crimes (i.e., a divisible statute, triggering the modified categorical approach), or whether it enumerates various factual *means* of committing a single element (i.e., an indivisible statute, requiring the categorical approach). *Id.* at 2249–50. If a state court decision "definitively answers the question," then a sentencing judge "need only follow what it says." *Id.* at 2256. Or, "the statute on its face may resolve the issue." *Id.* If statutory alternatives carry different punishments, then they must be elements (and, thus, the statute divisible, triggering the modified categorical approach). *Id.* (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)). "Conversely, if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." *Id.*

I find that Mr. Sanchez's statute of conviction, § 30-16-3, is divisible. The statute reads:

> **Burglary.**
>
> Burglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with the intent to commit any felony or theft therein.
>
> **A.** Any person who, without authorization, enters a dwelling house with intent to commit any felony or theft therein is guilty of a third degree felony.
>
> **B.** Any person who, without authorization, enters any vehicle, watercraft, aircraft or other structure, movable or immovable, with intent to commit any felony or theft therein is guilty of a fourth degree felony.

7

§ 30-16-3. The statute is divisible into subsections A and B, which separate the alternative elements. A plain-text reading of the statute shows that New Mexico burglary is divided into residential burglary and all other types of burglary. Furthermore, the subsections carry different penalties. Subsection A, burglary of a "dwelling house," is a third degree felony. *Id.* Subsection B, burglary of a "vehicle, watercraft, aircraft or other structure, movable or immovable," is a fourth degree felony. *Id.* As *Mathis* instructs, statutory alternatives carrying different penalties "must be elements." 136 S. Ct. at 2256 (citing *Apprendi*, 530 U.S. 466). The statute is divisible into subsection A (residential burglary) and subsection B (non-residential burglary).[4]

Because I find the statute is divisible, I apply the modified categorical approach to determine whether Mr. Sanchez was convicted under subsection A or subsection B. *Id.* at 2249 (describing the modified categorical approach). Neither party has submitted documentation of Mr. Sanchez's prior convictions to the Court, but both parties describe his prior convictions as being for "residential burglary" under § 30-16-3(A). [Doc. 7] at 2–3, 5; [Doc. 13] at 5–6. Additionally, the PSR characterizes Mr. Sanchez's prior burglary convictions as residential burglary convictions under subsection A. PSR at 7, 8, 10–11. Therefore, I find that Mr. Sanchez was convicted under subsection A of the statute.[5]

---

[4] I have already concluded, in earlier cases, that § 30-16-3 is divisible into subsections A and B. *United States v. Jimenez*, [Doc. 18] at 9–10 in 16-cv-0661 RB/SMV (D.N.M. Nov. 16, 2016); *United States v. Perez*, [Doc. 12] at 14 n.7 in 16-cv-0545 RB/SMV (D.N.M. Oct. 12, 2016). Additionally, the Honorable James A. Parker, Senior United States District Judge, recently reached the same conclusion. *Turrieta v. United States*, [Doc. 10] at 3–4 in 16-cv-0395 JAP/KK (D.N.M. Oct. 28, 2016).

[5] Without expressly conceding that the New Mexico burglary statute is divisible, Mr. Sanchez urges that evaluating the statute's divisibility at the outset "puts the cart before the horse." [Doc. 16] at 1. He continues, "[t]he issue is

**Subsection A of the New Mexico burglary statute (residential burglary)
is substantially similar to generic burglary.**

Having concluded that Mr. Sanchez's prior convictions are for New Mexico residential burglary, I next "compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." *Descamps*, 133 S. Ct. at 2281. "A state statute does not need to match the generic definition verbatim." *Rivera-Oros*, 590 F.3d at 1133. It need only "correspond[] in substance to the generic meaning." *Taylor*, 495 U.S. at 599. "[T]o find that a state statute creates a crime outside the generic definition . . . . requires a *realistic probability*, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Rivera-Oros*, 590 F.3d at 1133 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). I find that New Mexico residential burglary—the unauthorized entry of a dwelling house with the intent to commit any felony or theft therein—is substantially the same as, or narrower than, generic burglary.

The parties agree that *Taylor* sets out the elements of generic burglary: "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." 495 U.S. at 599; *see also Mathis*, 136 S. Ct. at 2248 (quoting *Taylor* for the generic definition); [Doc. 7] at 6 (quoting *Taylor*, 495 U.S. at 599); [Doc. 13] at 3 (quoting *Mathis*, 136

---

not whether the statute is divisible, but whether the New Mexico offense of burglary of a dwelling is broader than generic burglary." *Id.* I agree that an analysis of whether New Mexico residential burglary is broader than generic burglary is central to reaching a decision in this case, and I embark on such an analysis *infra*. However, I consider that question only after first concluding that the statute is divisible and that Mr. Sanchez was convicted under subsection A, and not subsection B. Otherwise, if I were to assume that the New Mexico burglary statute were indivisible, the relevant inquiry would be whether New Mexico burglary in its entirety—burglary of a "vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable"—has the same elements as generic burglary. Where a statute is divisible, like this statute, *Mathis* instructs otherwise; the appropriate inquiry, following application of the modified categorical approach, is whether New Mexico burglary of a "dwelling house" has the same elements as (or narrower elements than) generic burglary. *See Mathis*, 136 S. Ct. at 2256 (characterizing the divisibility question ("elements or means?") as the "threshold inquiry").

S. Ct. at 2248).  The parties dispute the breadth of the locational element of both generic burglary and New Mexico residential burglary.  That is, they dispute whether the definition of "dwelling house" in subsection A of the New Mexico statute is broader than the definition of "building or other structure" in the generic offense.[6]

Mr. Sanchez argues that the locational element of New Mexico residential burglary, "dwelling house," is broader than that of generic burglary, "building or other structure." [Doc. 7] at 9–10; [Doc. 12] at 3–5; [Doc. 16] at 2–9.  He argues that New Mexico residential burglary is broad and encompasses the burglary of any of the structures listed in *either* subsection A *or* subsection B of the statute ("any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable"), provided the structure is used for habitation.  [Doc. 16] at 2–3, 7–8.  Therefore, Mr. Sanchez argues, a person could be convicted under subsection A for burglarizing a movable vehicle in which someone is living.  *Id.* at 3, 8 (arguing that a "dwelling house" could be a "watercraft, trailer, mobile home, car, RV, or even tractor-trailer truck in which a person is customarily living"); [Doc. 7] at 9–10.  He further contends that generic burglary is limited to the burglary of a building or other "enclosed space" that is not movable. [Doc. 7] at 9–10; [Doc. 16] at 7 (citing *Taylor*, 495 U.S. at 598, and *Shepard v. United States*, 544 U.S. 13, 15–16 (2005)).  He asserts that generic burglary does not encompass the burglary of, for example, "a boat or motor vehicle."  [Doc. 16] at 7 (internal quotation marks omitted).

---

[6] To stave off any confusion, I note at the outset that, in the Tenth Circuit, the generic offense of "burglary," as enumerated in the ACCA, is separate from the generic offense of "burglary of a dwelling," as enumerated in the Guidelines.  The line of case law interpreting generic burglary is distinct from the line of case law interpreting generic burglary of a dwelling; though perhaps counterintuitive, generic burglary of a dwelling is not merely a specialized type of generic burglary.  *Compare, e.g.*, *United States v. Ramon Silva*, 608 F.3d 663, 666–68 (10th Cir. 2010) (analyzing generic burglary), *with Rivera-Oros*, 590 F.3d at 1128–33 (analyzing generic burglary of a dwelling and noting that the analysis is separate from that of generic burglary).

Because, as he maintains, generic burglary does not accommodate the burglary of movable structures such as motor vehicles, even where used as habitations, New Mexico residential burglary is overbroad.  Thus, Mr. Sanchez argues, his prior convictions for residential burglary cannot qualify as violent felonies under the enumerated clause of the ACCA.

The United States disagrees, arguing that subsection A should be cabined by its plain language, which refers only to burglary of a "dwelling house" and does not refer to burglary of "vehicles, watercrafts, and aircrafts."  [Doc. 13] at 6.  The government urges the Court not to let state law interpretations of the *non-residential* burglary subsection inform the scope and meaning of *residential* burglary.  *Id.* at 8–10.  The government also points out that New Mexico law further narrows "dwelling house" to only those structures "customarily used as living quarters." *Id.* at 6–7.

I find Mr. Sanchez's argument unpersuasive.  First, New Mexico residential burglary is not as broad as Mr. Sanchez claims; it is not susceptible to the interpretation that he urges the Court to accept.  Rather, a plain-text reading of the statute, the Supreme Court's decision in *Mathis*, and the state court decisions interpreting burglary of a "dwelling house" compel a finding that New Mexico residential burglary does not include movable structures.  Nor does the Tenth Circuit construe generic burglary as narrowly as Mr. Sanchez claims.  Even if New Mexico courts interpreted residential burglary to include the burglary of a movable vehicle in which a person was living, the residential burglary subsection would *still* comport with the generic definition: the Tenth Circuit has held that generic burglary encompasses burglary of such structures, where they are used as habitations.  Ultimately, there is no realistic probability that

11

New Mexico courts would construe burglary of a "dwelling house" in a way that would render it overbroad. *See Gonzales*, 549 U.S. at 193.

<u>Subsection A of the New Mexico burglary statute (residential burglary) is not susceptible to the broad interpretation that Mr. Sanchez gives it—It does not encompass the burglary of *all* structures listed in § 30-16-3.</u>

*The plain text of the statute and the holding of* Mathis *indicate that subsection B cannot be incorporated into subsection A.*

New Mexico residential burglary—the burglary of a "dwelling house," under subsection A of the burglary statute—simply does not encompass, as Mr. Sanchez suggests, the burglary of any and all structures listed in § 30-16-3 (whether enumerated in subsection A or subsection B), so long as the structure is used as a habitation.[7]   As an initial matter, such an interpretation would defy a plain-text reading of the statute and would impermissibly disregard the mandate of *Mathis*.   The New Mexico legislature purposefully separated burglary of a dwelling house from all other types of burglaries by dividing the burglary statute into two subsections, carrying two different punishments, based on their respective locational elements— subsection A (dwelling houses, a third degree felony) and subsection B (vehicles, watercrafts, aircrafts, and other structures, movable or immovable, a fourth degree felony).  *See* § 30-16-3(A)–(B).   It defies logic to read subsection A as encompassing burglary of a vehicle, for

---

[7] Mr. Sanchez relies on a tortured reading of the New Mexico burglary statute in order to conclude that when New Mexico courts interpret the meaning of *any* of the terms of location listed in the statute, such interpretation applies equally to both subsection A and subsection B.   He asserts that because New Mexico courts and the New Mexico Uniform Jury Instructions define "dwelling house" as "any structure, any part of which is customarily used as living quarters," subsection A "incorporates the term 'structure' that is used in [subsection B]."  [Doc. 16] at 2–3 (internal quotation marks omitted).   He further contends that because "the term 'other structure[]' also appears in the introductory paragraph to § 30-16-3, which defines all types of New Mexico burglary," New Mexico courts' analyses of that term bind to subsection A as well as subsection B.   *Id.* at 4.   Under this guise, he relies on New Mexico case law interpreting the locations enumerated in subsection B to argue how broad subsection A can be.  *E.g.*, [Doc. 12] at 3–5 (citing New Mexico case law).

example, when subsection B of the very same statute—and subsection B alone—explicitly refers to burglary of a vehicle.  Likewise, it defies logic to import a state court's analysis of "other structure" to subsection A, when that language appears only in subsection B.  That such language, as Mr. Sanchez points out, "also appears in the introductory paragraph to § 30-16-3, which defines all types of New Mexico burglary," is immaterial under *Mathis* when, as here, a statute is divisible.  *See* [Doc. 16] at 4.  According to the *Mathis* modified categorical approach, when a statute is divisible into multiple alternative elements, courts must compare the crime of conviction against the generic offense using the specific alternative element that was used to convict the defendant—in this case, "dwelling house" and not "vehicle, watercraft, aircraft or other structure, movable or immovable."  *See* 136 S. Ct. at 2256.  *Mathis* directs courts away from analyzing a statute globally when the statute, like New Mexico burglary, is divisible. Mr. Sanchez's reliance on New Mexico case law interpreting non-residential burglary is therefore misplaced and I need not consider it further.[8]

> *Mr. Sanchez cites no case law in which a New Mexico court has interpreted subsection A to include the structures listed in subsection B.*

Furthermore, Mr. Sanchez has supplied no authority to support his theory that the locations enumerated in subsection B (and the case law interpreting them) can be applied wholesale to subsection A—that the language in the Uniform Jury Instructions defining "dwelling house" provides a hook sufficient to reel in this whole separate body of case law.

---

[8] Nor do I need to consider the Tenth Circuit's interpretation of the generic version of "burglary of a dwelling," as that term is used in the Guidelines, which Mr. Sanchez cites as persuasive authority.  [Doc. 16] at 8 n.1 (citing *Rivera-Oros*, 590 F.3d at 1131–33).  A state's interpretation of one of its crimes, whatever it is named, need not track a circuit court's interpretation of that crime's generic definition.  Indeed, the very purpose of the present analysis is to determine whether New Mexico burglary is sufficiently similar to generic burglary.

Mr. Sanchez cites no case in which a New Mexico court relied on an interpretation of the non-residential burglary statute to uphold a conviction for residential burglary.   In fact, Mr. Sanchez cites no case at all in which a New Mexico court has actually interpreted the meaning of "dwelling house" beyond the definition supplied in the Uniform Jury Instructions.[9] That he has failed to identify any such authority tends to suggest that there is no realistic probability that the residential burglary statute would be applied in the manner Mr. Sanchez proposes.  *See Gonzales*, 549 U.S. at 193.

*My own review of New Mexico case law interpreting subsection A*
*leads to the opposite conclusion.*

Finally, a consideration of the limited case law from the New Mexico courts addressing the meaning of "dwelling house" within § 30-16-3(A) is instructive and further compels the outcome that I recommend.  New Mexico courts have adopted the definition of "dwelling house" provided in the Uniform Jury Instructions: "any structure, any part of which is customarily used as living quarters."  *State v. Ross*, 1983-NMCA-065, ¶ 11, 100 N.M. 38, 53 (citing UJI 14-1631 NMRA).  The few cases interpreting burglary of a "dwelling house" do not evaluate whether structures listed under subsection B could qualify under subsection A.  Rather, these cases

---

[9] Mr. Sanchez does cite to two cases that touch on residential burglary, though neither alters my analysis.  *See* [Doc. 16] at 3–4 (citing *State v. Anaya*, 2015 WL 2092804, at *4 (N.M. May 4, 2015) (unpublished); *State v. Daugherty*, 2013 WL 4105525, at *4 (N.M. Aug. 1, 2013) (unpublished)).  In both cases, the Supreme Court of New Mexico upheld the defendant's conviction for aggravated burglary where the defendant burglarized a "trailer [the victims] rented from [the defendant]," *Anaya*, 2015 WL 2092804, at *1, and a "mobile home," *Daugherty*, 2013 WL 4105525, at *1.  As Mr. Sanchez notes, the Court referred to the burglarized structures—the trailer and the mobile home—as a "dwelling or other structure" or "dwelling."  [Doc. 16] at 3–4.  Mr. Sanchez asserts that these cases, by referring to such structures as "dwellings," are evidence that New Mexico residential burglary encompasses "moving structures."  *Id.*  I am not persuaded.  First, New Mexico's aggravated burglary statute is not split into subsections, so the state courts need not consider whether or not the burglarized structure was a dwelling.  And, in fact, the Court in these cases embarked on no such analysis—it only referred to the structures in passing as a "dwelling or other structure" or a "dwelling."  Finally, as discussed *infra*, the Tenth Circuit has held that generic burglary *does* encompass trailers and like structures that are utilized as habitations.

analyze whether the burglarized location satisfies the "living quarters" requirement of subsection A.  In *State v. Ervin*, the New Mexico Court of Appeals held that a burglarized house was a "dwelling house" for purposes of § 30-16-3(A) because the defendant presented no evidence that the previous occupant of the house "had abandoned the house or had no intention of returning."  1981-NMCA-068, ¶¶ 1, 4, 96 N.M. 366, 367.  The court cited with approval the common law rule that "a building is not a dwelling before the first occupant has moved in; nor does it continue to be a dwelling after the last occupant has moved out with no intention of returning."  *Id.* ¶ 3.  Though not conclusive, *Ervin* suggests that New Mexico residential burglary contemplates only those structures that lend themselves to occupancy over some fixed period of time.  *See also State v. Lara*, 1978-NMCA-112, ¶¶ 4–5, 92 N.M. 274, 275 (holding that a garage attached to a residence but from which there was no direct access to the interior of the house was a "dwelling house" under the residential burglary statute "because the garage was a part of the structure used as living quarters").

In the one case in which a New Mexico court actually discussed the subsection B structures in evaluating a conviction under subsection A, the court rejected the argument Mr. Sanchez raises here.  *State v. Ruiz*, 1980-NMCA-123, 94 N.M. 771, *superseded by statute on other grounds as stated in State v. McCormack*, 1984-NMCA-042, ¶ 12, 101 N.M. 349, 351–52. In *Ruiz*, the court addressed the meaning of "dwelling house" in the context of holding that criminal trespass is a lesser included offense of residential burglary.  *Id.* ¶¶ 40–46.  As a preliminary matter, the court explained that "[t]he offense charged was burglary of a dwelling house; thus, we are not concerned with vehicles, watercraft or aircraft, or other structures."  *Id.*

15

¶ 39.  Next, in comparing the respective locational elements of residential burglary (entry of a "dwelling house") and criminal trespass (entry of "lands of another"), the court held that trespass is a lesser included offense of residential burglary because entry of a dwelling house necessarily means entry "upon the lands of another."  *Id.* ¶ 45 (internal quotation marks omitted).  "Lands," the court stated, "includes buildings and fixtures, and is synonymous with real property."  *Id.* (internal quotation marks omitted).  "When one enters another's dwelling house, . . . one has entered lands of another."  *Id.*  The court was careful to note that "[t]his reasoning, of course, would not apply if the burglary was of a vehicle, watercraft or aircraft."  *Id.*  The court in *Ruiz* stated plainly (albeit in dicta) that the locational element of residential burglary excludes vehicles and the like and is limited to fixed structures.  Subsection A of the burglary statute is not susceptible to the broad interpretation that Mr. Sanchez asks the Court to give it.  The two subsections of New Mexico burglary set out discrete locational elements, and the locations listed in subsection B cannot be read into subsection A.

<u>Generic burglary is broader than Mr. Sanchez claims it is—It includes<br>the burglary of a vehicle used as a habitation.</u>

Even if the New Mexico residential burglary statute could be read to include the burglary of a vehicle in which a person was living, as Mr. Sanchez maintains, it still would not be overbroad, because generic burglary in the Tenth Circuit is not as narrow as Mr. Sanchez contends it is.  There is no question that generic burglary excludes the burglary of "vehicles," that is, movable structures used for transportation.  *See Shepard*, 544 U.S. at 15–16 (generic burglary is limited to burglaries "committed in a building or enclosed space . . ., not in a boat or motor vehicle"); *Mathis*, 136 S. Ct. at 2250 (Iowa statute was overbroad where it reached "any

16

building, structure, *[or] land, water, or air vehicle*" (emphasis and alteration in original) (internal quotation marks omitted)).  Mr. Sanchez, however, interprets the Supreme Court's language on vehicles and movable structures to mean that generic burglary cannot encompass the burglary of any movable structure, even when such structure is used as a habitation.  *See* [Doc. 16] at 4, 7–9.  He cites for support a recent decision of the Fourth Circuit Court of Appeals that so construed the generic definition.  [Doc. 12] at 2–3 (citing *United States v. White*, 836 F.3d 437 (4th Cir. 2016)).[10]

    The Tenth Circuit, however, has already spoken on this issue.  In *United States v. Spring*, the court held that generic burglary encompasses burglary of a "mobile home or vehicle adapted for the overnight accommodation of persons."  80 F.3d 1450, 1462 (10th Cir. 1996) (internal quotation marks omitted).  The court in *Spring* noted that the Texas statute at issue did "not include vehicles in the sense in which *Taylor* intended," that is, vehicles whose sole or primary purpose is transportation, rather than habitation.  *Id.*  In reaching this conclusion, the court pointed to the purpose behind the inclusion of burglary as a predicate offense and *Taylor*'s differentiation between burglary of a building and burglary of a car: the burglary of structures such as homes poses a risk of violence to the occupants of the house or other structure.  *Id.* (quoting *United States v. Sweeten*, 933 F.2d 765, 771 (9th Cir. 1991), *overruled by United States*

---

[10] In that case, the Fourth Circuit held that a West Virginia burglary statute was overbroad because it included, in a non-exhaustive list, burglary of "'a mobile home, house trailer, modular home, factory-built home or self-propelled motor home, . . . or any other nonmotive vehicle primarily designed for human habitation and occupancy and used as a dwelling regularly or only from time to time.'"  *White*, 836 F.3d at 445 (quoting W. Va. Code § 61-3-11(c)).  In other words, that court found that the inclusion of "vehicles"—identifying specifically the "self-propelled motor home"—rendered the statute broader than the generic definition, even where the vehicle is used regularly as a residence.  *Id.*  Mr. Sanchez urges that the West Virginia statute is analogous to New Mexico's residential burglary statute.

*v. Grisel*, 488 F.3d 844 (9th Cir. 2007)).  The burglary of a vehicle, by contrast, is more like a property crime; it is less severe because it does not pose the same risk of violent confrontation. *Id.* (quoting *Sweeten*, 933 F.2d at 771).  The burglary of a mobile home or like structure is much more like the burglary of a home than a vehicle.  *Id.* (quoting *Sweeten*, 933 F.2d at 771).  Indeed, as the court noted, it "is often likely to pose a greater risk of violence to the occupant or owner than the burglary of a building or house because it is more difficult for the burglar to enter or escape unnoticed." [11]  *Id.* (quoting *Sweeten*, 933 F.2d at 771); *see also United States v. Gamble*, 130 F. App'x 941, 942–43 (10th Cir. 2005) (affirming the holding of *Spring*).

The Tenth Circuit reiterated the holding of *Spring* in *Ramon Silva*, 608 F.3d at 668. "'[T]he generic definition [of burglary] broadly construes the possible settings for burglary,'" the court noted.  *Id.* (second alteration in original) (quoting *United States v. Cummings*, 531 F.3d 1232, 1235 (10th Cir. 2008)).  It is not restricted to "permanent" spaces "designed for *human habitation or business*."  *Id.* (internal quotation marks omitted).  Generic burglary is "'coterminous,'" the court concluded, with a state statute that prohibits burglary of "'a building or other place designed to provide protection for persons or property against weather or intrusion,'" but that does not include "'vehicles or other conveyances *whose primary purpose is transportation*.'"  *Id.* (emphasis added) (quoting *Cummings*, 531 F.3d at 1235–36).

---

[11] I also note that, while the Ninth Circuit has adopted a position similar to the Fourth Circuit's, *see Grisel*, 488 F.3d at 850–51, other circuits have reached the same conclusion as the Tenth Circuit.  *See United States v. Constante*, 544 F.3d 584, 585 (5th Cir. 2008) (referencing the same Texas statute at issue in *Spring* and noting that the Fifth Circuit has reached the same conclusion) (citing *United States v. Silva*, 957 F.2d 157, 162 (5th Cir. 1992)); *United States v. Nance*, 481 F.3d 882, 887–88 (6th Cir. 2007) (holding that a conviction under Tennessee law for burglary of a "habitation"—which the state statute defined to include buildings, mobile homes, and trailers, among other structures, used for overnight accommodations—satisfied the generic definition of burglary and was a qualifying violent felony under the ACCA).

Thus, while the law is clear that generic burglary does not include those movable structures "whose primary purpose is transportation," *id.* (internal quotation marks omitted), in the Tenth Circuit, mobile homes, trailers, and like structures used for habitation *do* satisfy generic burglary's locational element.  The hypothetical situation to which Mr. Sanchez repeatedly turns in his briefing—a person living in a movable trailer or using his vehicle as his dwelling—does not, in fact, run afoul of the definition of generic burglary in the Tenth Circuit.

Ultimately, underlying my comparison of New Mexico residential burglary with generic burglary is the Supreme Court's mandate that there must be "a realistic probability, not a theoretical possibility, that the [s]tate would apply its statute to conduct that falls outside the generic definition of a crime." *Gonzales*, 549 U.S. at 193.  To make such a finding "requires more than the application of legal imagination to a state statute's language." *Id.*  Mr. Sanchez asks the Court to conjure a circumstance under which a person could be convicted under subsection A for burglarizing a structure listed in subsection B—and not just any structure, but one, utilized as a dwelling, that would fall outside the Tenth Circuit's permissive conception of the locational element of generic burglary. *See Ramon Silva*, 608 F.3d at 668.  Mr. Sanchez himself does not point to any such case.  There is no realistic probability that New Mexico courts would apply the residential burglary statute to a locational element outside the generic definition.  Mr. Sanchez asks the Court to construe New Mexico residential burglary as overbroad based on the theoretical possibility that the subsection could be applied to conduct outside the generic definition.  In line with the dictates of the Supreme Court and the Tenth Circuit, I decline to do so.

Mr. Sanchez makes a compelling case as to why New Mexico burglary, if it were an indivisible statute, would not qualify as a "violent felony" under the ACCA, or why a conviction under subsection B of the New Mexico burglary statute would not qualify. But the statute *is* divisible, and Mr. Sanchez was convicted under subsection A, not subsection B. He wants to fuse the two subsections so that they mean one and the same thing. The burglary statute, however, is not susceptible to such an interpretation. I find that burglary of a dwelling under § 30-16-3(A) meets the generic definition of "burglary."[12] Nor is there a realistic probability that the New Mexico courts would interpret the provision in a manner that would sever this correspondence in the future. Therefore, New Mexico's residential burglary statute, § 30-16-3(A), qualifies as an enumerated "violent felony" under the ACCA, 18 U.S.C. § 924(e)(2)(B). Accordingly, I find that Mr. Sanchez's sentence was enhanced under the enumerated clause and not the invalidated residual clause. Mr. Sanchez's § 2255 motion should be denied.

<u>Conclusion</u>

**IT IS THEREFORE RECOMMENDED** that Defendant Marcos Sanchez's Motion [CR Doc. 104; CV Doc. 1] and Amended Motion [CR Doc. 112; CV Doc. 7] to correct his sentence under 28 U.S.C. § 2255 be **DENIED** and that case No. 15-cv-1188 JB/SMV be **DISMISSED with prejudice**.

---

[12] Judge Parker has reached the same conclusion. *Turrieta*, [Doc. 10] at 6–8 in 16-cv-0395 JAP/KK.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.** *See* **D.N.M.LR-Civ. 10.1.  If no objections are filed, no appellate review will be allowed.**

**STEPHAN M. VIDMAR**
**United States Magistrate Judge**